## ARMSTRONG CORK CO. v. UNITED CORK CO.

### No. 5433.

District Court, D. New Jersey.
Oct. 17, 1938.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Stebbins, Blenko & Parmelee, of Pittsburgh, Pa., by Walter J. Blenko, of Pittsburgh, Pa., of counsel), for plaintiff.

McCarter & English, of Newark, N. J. (Noah A. Stancliffe, Fritz v. Briesen, and Hans v. Briesen, all of New York City, of counsel), for defendant.

FAKE, District Judge.

This is a patent suit in which plaintiff seeks an accounting and injunctive relief for the alleged infringement of the Bertelsen patent No. 1,607,047, relating to the manufacture of artificial cork and assigned to plaintiff. The defendant denies infringement and contends that if the patent is so construed as to include within the scope of its claims any process heretofore or now used by defendant then, in that event, the said claims are void because the subject matter thereof has been shown and described in divers preceding patents and publications.

The specification discloses that the invention relates "particularly to shaped bodies of artificial cork formed by subjecting the cork particles to a heating operation in which the particles are expanded, and the mass shaped to the desired form." The then existing practice in this connection is said to have consisted in subjecting cork particles "compressed in a suitable mold, to a baking operation, this baking operation acting to expand the cork particles and to unite them into a more or less homogeneous porous mass. It has also been proposed, instead of baking the molds containing the compressed cork, to apply the necessary heat to the cork by means of super-heated steam" as disclosed in a prior patent issued to Grunzweig, No. 997,056. It is pointed out that when steam is used it was supposed that it was necessary to leave the cork particles in loose form while the steam was applied, and this required the use of separate heating and molding vessels, or if the same mold were used it was necessary to apply pressure to the cork in the mold in order to shape the mass.

Bertelsen then says that he has discovered that a two stage operation is unnecessary, and that the desired result may be obtained "by compressing the cork particles in the mold in the usual manner and then passing steam through the mass for a sufficient time to effect the baking operation." So much for the specification.

Claim 2 of the patent, which is an example claim, reads as follows:

"The herein described method of forming molded bodies of artificial cork which consists in charging and compressing the mass of cork particles into a shaping vessel or mold, and then passing a heating medium through such mass while it is under compression to bind the cork particles by resinous materials from the cork, substantially as described."

The other claims in suit speak of steaming while the cork "is held in compressed condition" or "while it is still under compression" or while the cork particles "are placed and held under applied compression."

In view of the prior state of the art and the admissible evidence contained in the file wrapper, this patent must be found to be invalid if it is not very strictly construed. Much difficulty was experienced before the Examiner in so wording the claims as not to cover things that were well known and old in the art. In this connection, the patent of Grunzweig was cited by the Examiner, and a study of this patent with the proceedings underlying its issuance further leaves it clear, I think, that Bertelsen's patent must be limited carefully in its construction to include no more than the exact wording will permit. So viewed, the problem here is greatly simplified and the sole question is whether defendant in its method of manufacture injects superheated steam into the cork mass while it is "under compression."

By stipulation in writing between the parties, the defendant's process or method of manufacture is placed before the Court together with diagramatic drawings relat-

ing to the same. They cannot be set forth in this memorandum, but reference to them is necessary for a full understanding of what may be said here.

Briefly stated, the defendant's method consists of certain major steps, which without particularly describing the mechanisms involved, consists of:

First: Opening the container or mold.

Second: Placing a charge of loose particles of granulated cork in said mold until the top of the mass is about twenty-two inches from the bottom perforated plate of said mold.

Third: The mold is then closed and a plunger having a perforated plate descends upon the cork mass compressing the said mass between the two perforated plates until its thickness or depth is reduced from twenty-two inches to fifteen inches.

Fourth: The plunger is then immediately raised until the aforesaid plunger plate reaches a position of about twenty inches from the bottom perforated plate.

Fifth: The cork mass having been thus compressed from twenty-two inches to fifteen inches then quickly rises or expands until it reaches a thickness or depth of nineteen inches, thus leaving one inch of clear space at the top of the receptacle in which it is contained. The cork particles are then found to be in a loose mass and not cohered to each other.

Sixth: The plunger is now lowered about 1/4 of an inch leaving 3/4 of an inch in the clear above the cork aggregate. A spacer block prevents any further downward movement of the plunger.

Seventh: Superheated steam is then introduced into the container passing through the perforated plates on the top and out through the perforated plates at the bottom of the container, thus permeating the mass for a period of twenty-five minutes.

Eighth: The steam is then shut off, the spacer block removed, and the plunger descends against the mass until it is compressed to a thickness of 12 3/4 inches finishing the product.

It is not necessary to consider here the unloading of the mold since that factor plays no part in this problem.

In the Seventh step above described resides the problem as to whether or not the steam is then being injected while the cork is "under compression." In this connection plaintiff argues that inasmuch as the cork particles are confined to a lesser volume than the original charged volume, they are still compressed. In other words, the cork particles remain compressed until fully expanded to their original dimensions. Defendant answering says the particles so far from being compressed are actually engaged in expansion. There can be no doubt, I think, but that with relation to their original state the particles are compressed, without this however, that they are in the process of compression and defendant's contention that expansion is taking place both within the particles and in the mass cannot be successfully denied. It is a characteristic of cork to expand up to 95% of its original state. This then directs attention to the exact wording of the claims and referring to the sample claim 2 above, it is found that plaintiff's claim covers only that method wherein the "heating medium" (in this case superheated steam) is applied to "such mass while it is under compression." I find here that in defendant's method the steam is not being applied while the cork is under compression.

True, it is applied while the particles are resting slightly compacted in a closed container or mold, but such confinement and processing were old in the art. Cork particles in a container naturally tend to compact themselves. This was illustrated in the courtroom during the trial. Surely a compression mechanically applied and then released before the steam is injected is not that compression which the claims of the patent contemplate. It amounts to no more than giving the container good measure. Moreover, such compression does not tend to bind the cork particles "by resinous materials from the cork" as the claims require. My conclusion is that the defendant is not guilty of infringement.

It is my finding as a matter of law that as hereinbefore construed, the patent in suit is valid but if construed to cover the defendant's method, the same becomes invalid.

A decree will be entered in conformity with the above conclusions.

For the purposes of full compliance with Equity Rule 70 1/2 as now construed by the United States Supreme Court, 28 U.S.C.A. following section 723, it will be necessary to prepare an exhaustive statement of all facts notwithstanding the stipulations now before this Court. See the Per Curiam opinion in Interstate Circuit v. United States, 304 U.S. 55, 58 S.Ct. 768, 82 L.Ed. 1146. In prepa-

ration for appeal, counsel will therefore confer on their respective proposed findings of fact, agree as far as may be and then appear before the Court on notice finally to dispose of the same, to the end that nothing may be overlooked. Conclusions of law should also be prepared by counsel to conform with the rule and the above cited case. This memorandum has been prepared not as a substitute for the requirements of the aforesaid rule, nor as an opinion, but merely for the purpose of informing counsel as to the reasoning this Court has indulged in. The question as to whether or not this memorandum should form part of the record on appeal will be considered when the problems under Rule 70½ are disposed of.